Okay, we'll hear Thomas v. Caroll. Mr. Levin. Morning, your honors. Good morning. I heard a speaker this weekend who said when you speak before the Court of Appeals, you should be sincere, be brief, and then be seated. I will try and do that. But you have a difficult client, I must say, in this case. Yes, your honors, please. Are you pro bono here? I am appointed by this Court, your honor, to represent Mr. Rahn. Somebody who didn't have a lawyer. Who did not have a lawyer. And I would also ask that I reserve five minutes at the end for rebuttal. Is it Levin or Levin? Levin, your honor. Thank you. The facts in this case are not very complicated. Basically, my client got arrested at the correctional center where he was for hitting a guard. I think stabbing a guard. Am I not right? Yes, well for... With a shank. I've just been through the prison, so I now know where the shank is. Well, that happened with him in the prison. He had a public defender appointed for him. The public defender files a motion to withdraw because there was a difficulty between him and Mr. Thomas. And Mr. Thomas wanted to represent himself. We know the facts. Okay, you know the facts. Let me ask you a question. I know Judge Pollack wanted to, but I'll go first. What rule do you want us to establish? I mean, we know from the Supreme Court that a defendant is entitled to represent himself. As you point out in your brief. And we also know that if a defendant chooses to absent himself or herself from the courtroom, that that's perfectly acceptable. So in this case, and we haven't found another case like this, we have both principles, the accumulation of both principles. What should we do? Well, if Your Honor, please, as Your Honor says, it is correct that he has the right to absent himself and he has the right to have counsel. In this situation, I would submit... No, he has the right to not have counsel. Not to have counsel. Correct. Yes. And what I would say in this situation is that we have the two things, which Your Honor is correct, the Supreme Court has never decided upon, as when he agrees not to have counsel and he absents himself from the trial, what is the court supposed to do? But the problem we have, I guess Your Honor is saying, what should we do? We have a constitutional right that the trial has to be fair. And I guess my point, boiling it down to a very simple situation, is how can you have a fair trial when jury selection, opening statements, presentation of witnesses, cross-examination, verdict, polling of the jury, everything is done without anyone... You can't. You can't. You can't. But the question then, this is a habeas. Yes, Your Honor. So the question is, what is the clearly established law, if any, in which the two principles are both applied at the same time? Well, I know that we have to follow the decision of the Delaware Supreme Court unless we say it violated Supreme Court law, which obviously there is none, or it misapplied some federal law. And I guess my only argument can be that it misapplied the federal law... Which law? ...of the Sixth Amendment right to a fair trial. But isn't that true always? I mean, that's an overriding constitutional principle that governs every case, and yet we constantly find situations in which the question is, what can be done on habeas where the Supreme Court of the United States hasn't addressed the particular claim that with this fact pattern due process or the Sixth Amendment is offended? I mean, I realize I'm in a difficult situation, but I think the only thing... I think you're in a wonderful situation because you've taken this case, which leaves us sort of without anything to do, but go ahead. I think the only thing we can do is we can say that the Delaware Supreme Court misinterpreted my client's right to a fair trial. May I? Yes. Let me just put in a question now about the history of the case. I wasn't clear. Before the Delaware Supreme Court, your client did have counsel or did not? He was pro se. There was such a brief order from the Delaware court that I wasn't quite clear. He indicated to me that he was pro se because I didn't see anything in the briefing. So it appears he handled it himself. And as an aside, I believe the prosecutor assigned to the case, I didn't see it in the file, told me he had also done this once before, which I wasn't aware of. I'm sorry. No. The reason I ask about that history is because it would seem to me that the way the issue that you're urging on this court in habeas should have been addressed by the Supreme Court of the United States, was through a petition for certiorari from the Delaware Supreme Court. In that way, the Supreme Court of the United States could have laid down what I suppose many of us would think would be the proper constitutional rule, given when you have the convergence of these two factors, a trial judge has to insist on appointing counsel. And also, just before Your Honor, I believe he didn't even file any post-conviction petitions after the Delaware Supreme Court decided their case. He didn't go any further. Like in Pennsylvania, he would have done a post-conviction relief act petition. He didn't do that. He went right here. Well, you can't say ineffective assistance of counsel because he had no counsel. Correct. Judge Pollack's suggestion is an interesting one, but I'm not sure I would want to put money on the likelihood that the Supreme Court of the United States would have accepted the certiorari that Judge Pollack, had he been the lawyer, would have. I've never made it my practice to wager money on how the Supreme Court of the United States would decide something, or even how this court would decide anything. But I do recognize that we're talking about a court which grants certiorari in less than 1%, I think, of the cases that come before it. So I'm not suggesting that that was a likely result, only a possible one. Is it fair to say that because there was no clearly established law, it's hard to reverse the district court for failing to grant a habeas? But at the very least, you want us to establish, to clearly establish what should be done, and what do you think should be done if we were to do that? Well, I think in, I mean, what kind of result? I mean, I think normally what a judge would do, just in caution, I would imagine that a judge, and I mean, I believe Judge Farnham said this. With a point stand by counsel. He would appoint a stand, just as they sometimes do when a defendant says he wants to represent himself. And in some of the cases I believe quoted by the state here, even when the defendant says, I don't want stand by counsel, the judge does it just so that everything will run smoothly in the courtroom so they can consult. And maybe, who knows, maybe the defendant's attorney will get along. Bizarre. I mean, I read this. Bizarre to pick a jury and there's no, just absolutely, and have nobody there asking any questions. I mean, nobody, nobody to whom, nobody on my court to whom I've discussed this with can believe that this happened, but it really happened. And the judge actually, Judge Carpenter I believe it was, seemed very fair with what he was doing. He kept colloquying and I don't know why he just didn't appoint stand by counsel. Let me ask you about another issue. The defendant asked for subpoenas for 13 prisoners. Right. And the trial judge said, I'll give you three. Three, I think. What is the legal principle on that? Did he have to give him 13? Well, I know it's not an issue before this court. I don't believe he had to give him all the witnesses he won. I think in the case of judicial economy, a judge can say, all right, a lot of these witnesses are going to be repetitious. We're not going to have them all in. But I think the only thing in this case is I think that's what started the whole problem. It didn't appear that my client was trying to be obstreperous and make political statements and all of that. He was angry because he had this fight or whatever it was with the prison guard. He said, all these inmates saw what was going on, and there were even some guards, and I want them all to come in. The judge says, no, I'm only limiting you to three of these. Where did he get the three out? I mean, why did he say three and not five? I have no idea how the judge decided on that number. I mean, normally I think a judge would probably go over with the lawyer, who are the witnesses? Well, this witness is repetitious. This one is, et cetera. And say to the lawyer, how many do you want to have? And then they try and reach a number that they all agree upon. How Judge Carpenter came up with the number three, I do not know. Did you have any more questions? No. Okay. Thank you. Thank you, Your Honor. We'll get you back on your five-minute rebuttal. Thank you. Mr. Wallace? Good morning. May it please the Court? Good morning. You are for the State, is that right? Yes, ma'am. My name is Paul Wallace. I am the Chief of Appeals for the State of Delaware. I'm here on behalf of the respondents and appellees in this case. If you were the Chief of Appeals, do I gather you weren't at the trial court in this case? Not in this case. Actually, I tried Mr. Thomas for the case that put him in prison for 35 years. Oh, he had a 35-year sentence? I didn't know. They had a 35-year sentence? If you look in the transcript, you'll see him mention me several times. He's not a fan. Nor is he a fan of Judge Silverman, his prior judge. What was the position of the State prosecutor at the trial when it turned out there was nobody there representing the defendant and the criminal trial just proceeded? Did anybody say to the trial judge, Your Honor, you really should have standby counsel? No, Your Honor, and I believe this is why. And maybe a little history of Mr. Thomas and his time before the Delaware Superior Court might help the court a bit. As I said, he was tried in 1998. He also went pro se in that trial. I lost two weeks of my life in that trial, the first week of which was myself before with Mr. Thomas pro se and Judge Silverman going through a 75-witness list, which included people such as the Justice of the Peace, who signed his warrant because he wanted that person brought in to prove that his warrant was a forgery. Okay, but this is not on the record. Right. Well, I think a bit of it is. Well, as I said at the beginning, he's obviously a difficult client. In that prior trial, and this is on the record, he had blown through five different attorneys. In this case, he had gone through two already. Well, nobody suggests, I don't think, that the trial court abused its discretion in allowing him to be pro se. I mean, he doesn't get along with lawyers. I mean, you can't do anything about that. The real question is why wasn't there a standby attorney appointed? Because Mr. – I believe, Your Honor, Mr. Thomas – because Mr. Thomas' relationship even with his standby counsel has been very difficult. Yeah, but you don't have to have a relationship with a lawyer if the lawyer is appointed by the court and has to be there to protect the right of a difficult – I mean, this is not the only difficult witness that we've seen in my almost 30 years. The reality, however – There are people who don't like lawyers. The reality, Your Honor, however, is this. He had exercised his rights under Feretta to self-representation. Yeah. That meant the court could not inject an attorney to act on his behalf. Really? Even when he was gone. I'd suggest no. But what case says that? I believe Feretta itself says that, Your Honor. You can't inject an attorney on a person if he gave standby counsel. But we always have sometimes amicus curiae for the court. You mean that the court – if a defendant says, I don't want a lawyer, the court can't impose a standby counsel for the court's benefit so that the Sixth Amendment right is protected? But the question then becomes, Your Honor, what does that standby counsel do? Well, a standby counsel can ask the juror, have you ever had any relationship with any of the parties in this case? I don't know what this court judges do, but they ask questions like that. In the Delaware Superior Court, what happens in voir dire is the attorneys actually have no part other than listening to the answers and then making – Go ahead. No, go ahead. My point is this, Your Honor. If – and, in fact, this has happened in cases like Stiggers and Snowden and Delaware and elsewhere, where standby counsel was given and then standby counsel started to take an active role in a person's case who had asked for self-representation. And, in fact, a Sixth Amendment violation was found because that person's right to self – I heard. The Delaware Supreme Court, at very least. You mean the Delaware Supreme Court found a constitutional error? When standby counsel stepped in, not at the defendant's behest. On appeal by the defendant who had been convicted with – Yes. The case name is – What case is reflected? It's either Stiggers or Snowden. I cannot remember. It's S-T-I-G-A-R-S, which is cited by us, or Snowden. And I apologize. I can't remember which of the two it is. But what occurred in that case was the court had appointed standby counsel and then allowed standby counsel to start to really take over representation, questioning for certain witnesses. In that case, going to – Was the defendant present in that case? The defendant was present. But that's different than a case like this where the defendant – where there's nobody there. There may be nobody there, but, Your Honor, my suggestion is this. It is the defendant's right to waive, and defendants waive constitutional rights all the time. In this, he did it seriatim. He waived his right to representation and said, I want to represent myself, and then I don't want to be here. That is his right to do that. Mr. Wallace, maybe you could give me some of the history in the State Supreme Court that I was asking Mr. Levin about. I still find in the version of the Supreme Court of Delaware's opinion, I find no counsel at all reflected. Were you handling the case? I did not handle it at that time. My predecessor did. I do believe that Mr. Thomas did represent himself on direct appeal. Our Supreme Court orders never have counsel listed. Only our opinions do, and that's why it's not there. And your office then also would have been represented. Yes. Our office was represented. Mr. Thomas represented himself on direct appeal, as best as I can recall. Now, is it clear that the Delaware Supreme Court addressed federal constitutional claims? Yes. Well, I suggest, first of all, they mentioned Rule 43, Superior Court Rule 43, which is the same. It's a mirror image of federal Rule 43. Also, the cases that they cite, if you look at them, they discuss the Fretta right. So while they cite, I believe, almost exclusively state Supreme Court cases, each of those cases discusses the federal Sixth Amendment right. And I'll tell you the reason I asked the question is that the court recites in this appeal, Thomas claims that the Superior Court abused its discretion by, A, failing to appoint standby counsel, B, permitting the trial to proceed in his absence, C, limiting the number of defense witnesses, and D, denying his pre-trial motion or preliminary hearing. So I didn't see any recital by the court that these federal claims were. I believe in the second issue is when the court. That these federal claims were presented to the state Supreme Court. I would suggest that they had been. The abuse of discretion claim was addressed through some state Supreme Court cases, which do, in fact, then go back to Fretta and Wiggins and the fact that there is no right to hybrid representation, which is what really Mr. Thomas wanted. What Mr. Thomas really wanted in this case was to control the courtroom, as he always has. And when that was not going to happen, he absented himself. The state suggests respectfully that this is a very simple case because while it's an unusual factual circumstance, it's a simple case. He waived two very important rights. He did it knowingly, voluntarily, and intelligently, and left to the court to actually run the trial then at that point. And what about the concept of a fair trial and justice without anybody on the other side? Your Honor, I'd suggest that's always the defendant's right to waive, just as you may waive any trial whatsoever by plea. Is it his right to say that the court can't make sure that there's a fair trial or that justice will prevail? The defendant doesn't undo the Sixth Amendment. He does not undo the Sixth Amendment, Your Honor. However, he has the right under the Sixth Amendment that he may waive in certain areas. He waived his right to counsel. He waived his right to be present to exercise the other aspects of a Sixth Amendment fair trial. And I'd suggest that had the court injected an attorney in this case, and that attorney had taken over representation, we would be here on a whole bunch of different questions. And those different questions would be – What do you mean by taking over? Excuse me. What do you mean by taken over representation? Actually participated in the trial on Mr. Thomas's behalf. You mean acted as an attorney? Acted as an attorney, yes. Okay. When one has already said, I unequivocally want my right to self-representation. And in fact, even after he first said, I do not want to be present, Judge Carpenter again asked him, do you still want to represent yourself? And he said, certainly. And then called him back, you know. And called him back several times. I'm sorry. You've tried cases? Yes. Have you tried cases against pro se defendants? About 30. Would you consider it a fair trial in what we all understand notions of fairness to be, when a guy represents himself and he starts saying crazy things to witnesses or crazy things to the jury? Would you consider that a fair trial in what we would hope to be the model of judicial fairness? It's certainly not the model of judicial fairness. That's for sure. There's a farcical element to it in truth, isn't there? There becomes a very difficult element to it. That's for sure. It's sad, really, to watch, isn't it? It is. And in fact, what I see many times, just as Judge Carpenter did in this case, is extreme patience by our bench, which bends over backwards to try to either rein in the behavior of the defendant, help the defendant in certain ways. And it's difficult. And quite honestly, as a prosecutor, it can be even more difficult because you have to look fair. You certainly change the behavior. No, you have to be fair, not only look fair. You must do both, Your Honor. I'd suggest that we always try to be fair, but you have to bend over backwards to look. My late husband used to tell me that, and I forget in what building in England, but there's something around, you might know, around the… It's in the Justice Department. In England? In the U.S., if you're talking about the same court that I am. No, I'm talking about in England. There's something that says, it is not enough that justice be done, it must be seen that justice be done. Seen to be done, yes. Thank you for that. That's the U.K. expression. Your Honor, I suggest that justice was done in this case. The justice that Mr. Thomas actually requested, and that was that he represent himself, and that when he did no longer want to be present, that he not be present. I'm surprised when you say that you had this experience some 33 times. Is there some… I think they see me in the courtroom and they figure I can take this guy myself. I'm not quite sure, Your Honor, but actually I spent a very long time doing career criminal cases, and Mr. Thomas was one of them, and in fact, what you find is these defendants decide that they believe that they've been short shrifted by their attorneys and that they can do it better themselves. And so I've tried quite a few, actually, career criminals as pro se defendants. But the issue before us is not that. It's not what happens when a defendant decides. I mean, the Supreme Court has taken care of that in forever. It's what happens when nobody is there. And as Judge Pollack says, the congruence of the two principles does make it seem, as you said, as Judge Hardiman said, farcical. It can. One thing I would point out, and although, of course, because there was no cross-examination, it's difficult to tell. The defendant doesn't point to any specific errors in this trial, however. What was he in jail for the first time? What was the 35-year sentence for? He was an habitual criminal as of 1998. What happened was he holed himself up in a Wilmington hotel room, and then when the police tried to enter, shot through the door at the police officer. It was almost killing one. So he was convicted of reckless endangering and weapons charges. He received a 35-year sentence as an habitual criminal and then blindsided this correctional officer when he was in the maximum security, maximum housing unit of the Delaware Correctional Center. I do want to make one correction. This was not a stabbing, Your Honor. This was, in fact, he punched him. He came up behind the officer, punched him once in the back of the head, and then punched him two more times before other officers could come to his rescue. Do you care to address Carey v. Musladeen? Because what we've been discussing about the fairness or lack of fairness of the trial is it your position that that's all beside the point because under AEDPA there needs to be a Supreme Court holding directly on point in order for Mr. Carroll to receive the habeas relief that he seeks? Well, I think that what Musladeen definitely does tell us is that when there isn't that specific case, it's very difficult to say that it can either be contrary or an unreasonable application. And here there simply is no clear federal law as set forth by the United States Supreme Court that would apply here and which the Delaware Supreme Court was either contrary to or unreasonably applied. And the way that law gets made is the way Judge Pollack suggested that the Supreme Court would take a case on direct appeal and lay down the law and then that would be established. Is that right? Yes. But we can make the law, too, until the Supreme Court tells us we can't. We are the highest court that will have had this and is there any reason why we shouldn't declare the legal principle? I would suggest that when… You don't like the legal principle and the Delaware Supreme Court might not like it. But we have the right, don't we, to declare what the law should be in the future should this occur? I suggest respectfully, Your Honor, it depends on how the case gets here and when… Well, like right now. In this case I would suggest no, Your Honor, because I do believe that there are certain restrictions on the court's findings in this particular case. You mean that we don't have the right to declare that under the Sixth Amendment that a state court judge or a federal judge must appoint stand-by counsel when there is nobody there? I suggest, Your Honor, when it is contrary to the findings of the United States Supreme Court in every case that works around that issue, I would suggest that that's not a finding that the court should make. Go ahead. If this panel were to issue an opinion affirming the decision below denying habeas and explaining that in the view of this court that was an unconstitutional result and that the Constitution, at least to be understood in the Third Circuit, was to require in this extraordinary kind of circumstance that a trial judge appoint stand-by counsel whatever the defendant wants and whether present or… I mean if the defendant is going to absent himself. If this court issued an opinion to that effect, would it be your view that what this court said about the constitutional principle was dictum because the judgment below would be one of affirmance? Judgment here would be one of affirmance? I believe it would be this court giving guidance more than a specific holding of the law, Your Honor, yes. And then you could take it to the Supreme Court so that the Supreme Court could answer and say we were wrong. Certainly not looking for that extra work. I see that my time is up. May I ask one question before you sit down, Mr. Wallace? Sure. I'm still a little puzzled about the question as to whether the federal claims were really properly raised before they're addressed by the Delaware Supreme Court. Doubtless you have or at least have access to a copy of the brief which your office filed with the Delaware Supreme Court. Could you furnish that to us? Yes, absolutely, Your Honor. Which is our briefing on direct appeal to the Delaware Supreme Court in this issue. Yes. Was there a brief on the other side? I'd have to… Your Honor, Mr. Thomas writes so much I can't believe there wouldn't be but I can check. Okay. Would you mind? I know it would be hard for you probably to send us the requisite four but if you send one to the clerk's office, we'll direct the clerk's office to make copies for the panel. I will ensure it's done. Yes, Your Honor. Thank you. We appreciate the position you're in. Mr. McQueen, do you have something to say? Or did we say it all? I think you said it all, Your Honor. Thank you. Thank you very much. Thank you for undertaking this. Thank you. Thank you. Both counsels deserve a lot of commendation for presenting this unusual set of issues. Okay.